HERCULES A. GRAY AND YVONNE B. GRAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gray v. Commissioner
Docket No. 33275-84
United States Tax Court
T.C. Memo 1989-44; 1989 Tax Ct. Memo LEXIS 44; 56 T.C.M. (CCH) 1173; T.C.M. (RIA) 89044; January 30, 1989
Thomas E. Wheeler, Jr., for petitioners. Robert W. West, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioners' income tax for 1977 in the amount of $ 57,393 and an addition to tax under section 6653(b) [1] in the amount of $ 28,697. At *45 trial the parties stipulated that for 1977 petitioner Hercules A. Gray is liable for a deficiency in income tax in the reduced amount of $ 38,262 and an addition to tax under section 6653(b) in the amount of $ 19,131. The parties also agreed that petitioner Yvonne B. Gray is not liable for the addition to tax. After these concessions, the sole issue for decision is whether Yvonne B. Gray who is hereinafter referred to as petitioner in the singular qualifies under section 6013(e) as an "innocent spouse" with respect to the deficiency in tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and exhibits associated therewith are incorporated herein by reference. Petitioners resided in Pensacola, Florida, during 1977 and at the time of filing their petition. They filed a joint income tax return for 1977 on July 5, 1978 with the Internal Revenue Service Center in Atlanta. On the return they reported adjusted gross income of $ 18,514, excess itemized deductions of $ 4,918 including cash contributions of $ 953 and taxable income of $ 13,596. The adjusted gross income reported on the 1977 return included petitioner's salary of $ 11,176 *46 as a full-time elementary school teacher for Escambia County, Florida (from which there was deducted withholding in the amount of $ 1,398); a net profit of $ 7,146 from a retail beer and wine store known as Stomping Ground Cut-Rate Beer and Wine (Stomping Ground); and $ 192 from a partnership known as ATCO Investors. In 1977 petitioners also received $ 13,158.60 in nontaxable social security benefits of which $ 8,627.40 was for Mr. Gray, $ 1,132.80 for Mrs. Gray and $ 3,398.40 for their three children who were then five, nine and eleven years of age. From 1974 to 1977 petitioner was taking courses required for a masters degree and an educational specialist degree. During the fall of 1976 and the spring of 1977 she commuted from Pensacola to Mobile, Alabama for classes in these courses on two or three days a week after work. Mobile is approximately a one hour drive from Pensacola. During the summer of 1977 she commuted to similar classes in Montgomery, Alabama which is approximately a three hour drive from Pensacola. Being a retail beer and wine store the Stomping Ground did not require extensive labor. As a general rule the business was operated in two shifts with one employee *47 working each shift. During 1975, 1976 and 1977 neither Mr. Gray nor Mrs. Gray worked at the Stomping Ground on a regular basis. Instead Mr. Gray would settle up with the employees at the end of each shift and collect whatever cash was on hand. Beverage licenses for the Stomping Ground were obtained on applications signed by Mrs. Gray as owner. The licenses were issued in her name. On the Schedule C to each of their joint returns for 1975 through 1977 the income from the Stomping Ground was reported by petitioners in Mrs. Gray's name. They both had signatory authority over the checking account of the Stomping Ground and checks drawn on the account during 1977 bore a stamped imprint of her signature. Quarterly Federal tax returns, Forms 941, for the Stomping Ground as well as sales tax reports for the State of Florida were filed in her name. In litigation which occurred prior to the trial of this case both petitioners testified under oath that Mrs. Gray was the owner of the Stomping Ground business. In fact Mrs. Gray stated: Q. How was it that you came to purchase the business? A. Just everything that my husband has belongs to me -- it's in my name -- I usually do everything *48 -- it's always in my name. Q. Why is that? A. Because if he ever leaves me, I want everything to be mine. It's just an agreement we've had. During 1977 two of petitioners' children were enrolled in a private school and at least $ 402 of their tuition was paid by checks drawn on the Stomping Ground bank account. Checks totaling $ 3,802.96 were drawn on the account and used during 1977 to purchase jewelry from two different jewelers. During 1977 Mr. Gray had several life and health insurance policies in effect and premiums on the policies were paid from the Stomping Ground account. The beneficiary on each of the life insurance policies was either Mrs. Gray or Mr. Gray's estate. Mrs. Gray also had at least one life insurance policy in effect during 1977 on which premiums were paid from the Stomping Ground account. Checks totaling $ 2,312.17 drawn on the Stomping Ground account and automatic withdrawals from the account totaling $ 796.81 were used during 1977 to pay premiums on the aforesaid insurance. In 1977, petitioners took a vacation in the Bahamas which was paid for in part by two checks totaling $ 900 drawn on the Stomping Ground's bank account. In May, 1977 Mr. *49 Gray sold a parcel of real estate which was titled to him alone but Mrs. Gray was aware of the sale because she went to the office of the lawyer handling the closing and signed the deed. The sale was not reported on petitioners' return for 1977. In 1977 Mr. Gray purchased for $ 30,300 three contiguous parcels of land (parcels nine, eleven and eighteen) containing over six acres. These parcels were purchased with an aggregate down payment of $ 7,200 and loans totaling $ 23,100. In 1979, a fourth contiguous parcel (parcel number ten) was purchased by Mr. Gray at a cost of $ 9,300. In October of 1977, petitioners began construction of a house on parcel number eleven. The house was custom built and was completed and occupied by petitioners in mid-1978. The house has five bedrooms, four and one-half baths, a living room, dining room, den, kitchen, breakfast room, playroom and attached two-car garage. It contains approximately 4,879 square feet of living space. Prior to its construction, Mr. and Mrs. Gray agreed on the floor plan for the house after inspecting a similar house. They also agreed upon the location of the house upon the land. During construction, Mrs. Gray was *50 consulted with respect to all of the decorating decisions such as wall coverings, carpets and drapes. She also selected all of its appliances which cost between $ 3,200 and $ 3,300. Until February of 1978, petitioners owned and lived in a home on Belair Road in Pensacola. This house contained three bedrooms, two baths, a living room, dining room, kitchen and den. It was sold in February of 1978 for $ 33,500 and petitioners received $ 13,324.37 at the closing. On May 2, 1978, Mr. Gray transferred parcel number eleven and the new house to himself and Mrs. Gray for the purpose of vesting title in petitioners as tenants by the entirety. In 1984, Mr. Gray's entire interest in all parcels of the property was transferred to Mrs. Gray. On May 2, 1978, a construction loan was arranged by petitioners with the Citizens and Peoples National Bank of Pensacola. The construction loan which provided for advances of up to $ 100,000 was secured by a mortgage on the new house. Upon execution of the mortgage, funds totaling $ 40,000 were advanced to petitioners by the bank. The $ 40,000 was represented by a note payable at the rate of $ 830.34 per month for 60 months. On June 2, 1978, a *51 second advance for $ 25,000 was made on the construction loan and was represented by a note secured by the mortgage. This note was payable in 180 days. A third advance of $ 21,263.70 was made on the construction loan on August 29, 1980. The note representing this advance was payable in 115 days. On June 8, 1976 Mrs. Gray borrowed $ 1,502.40 from the Escambia County Teachers Credit Union. She paid $ 1,027.95 on this loan in 1977. In January 1977, Mrs. Gray purchased a 1977 Ford and financed $ 6,756.26 of the purchase price at the Credit Union. She made eleven payments totaling $ 1,958 on this loan in 1977. Mrs. Gray borrowed another $ 2,500 from the Credit Union on October 19, 1977. The purpose of the loan as stated in the credit request was for home improvement. Two payments totaling $ 134 were made on this loan in 1977. Petitioners borrowed $ 5,000 from the Credit Union on May 23, 1979 and to secure it executed a second mortgage on the new home. The purpose of this loan as stated in the credit request was for home improvement. In 1986, Mr. Gray pleaded guilty to having attempted to fraudulently evade the payment of income tax for the years 1978 and 1979 in violation *52 of section 7201 and one count of mail fraud. He also pleaded guilty to having fraudulently obtained social security benefits in 1980. OPINION Petitioner contends that she is not liable for the deficiency because she is an innocent spouse within the meaning of section 6013(e) which provides that a spouse is relieved from liability for income tax attributable to a taxable year if the following conditions are met: (A) A joint return is made for the taxable year, (B) On such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) The other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was a substantial understatement, and (D) Taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement. Respondent admits that a joint return was filed by petitioners for 1977. He contends, however, that the other three conditions of section 6013(e) have not been met. Petitioner has the burden of proof with respect to the conditions still *53 in dispute. ; Rule 142(a). As applicable to this case these conditions are: (1) on the joint return for 1977 there was a substantial understatement of tax attributable to grossly erroneous items of Mr. Gray; (2) petitioner did not know and had no reason to know of the substantial understatement; and (3) taking into account all of the facts and circumstances of this case, it is inequitable to hold petitioner liable for the deficiency attributable to the understatement. At least by implication the parties agree, and the record as a whole generally supports their agreement, that the unreported income in this case, and hence the grossly erroneous item under section 6013(e), was generated by the Stomping Ground business. Therefore respondent argues that the unreported income, or grossly erroneous item, belonged to Mrs. Gray and could not be considered a substantial understatement of tax attributable to Mr. Gray. With regard to the ownership of the Stomping Ground business, Mr. Gray testified that he purchased the business which was operated at all relevant times in rented premises in 1968 or 1969. Without explaining why, he *54 stated that the business was never placed in his name. Instead the business was originally operated in the name of his brother but in 1975 his brother went to work for a railroad and at his brother's request the business was transferred to petitioner rather than himself because he had been ill and if he got sick again he wanted his wife to "at least collect on the stock [inventory], or something." However, from the obvious conflicts in our findings as to the ownership and operation of the business we are unable to conclude that the substantial understatement in this case is attributable to income omitted by Mr. Gray. Furthermore, even if we resolved this factual issue in favor of petitioner by concluding that the Stomping Ground business belonged to Mr. Gray it would be impossible on the record before us to conclude that petitioner did not know or have reason to know of the omitted income. The burden of proof is on her to establish that a reasonably prudent person having the facts known or reasonably available to her in 1977 would have no reason to know that taxable income was omitted from the joint return for that year. ; *55 . We are satisfied that she has failed to carry this burden for the following reasons: (1) She is an intelligent person who had acquired in 1977 her second degree in education; (2) In 1977 she knew or reasonably should have known that she and the other members of her family were spending more money than was available to them from reported income plus nontaxable receipts such as social security benefits and borrowings; and (3) In 1977 she knew or reasonably should have known that the Stomping Ground business was being operated in her name because (a) she had so testified in previous litigation; (b) applications for beverage licenses, employment tax returns, and sales tax reports had been signed by her; and (c) she was not only authorized to sign checks on the Stomping Ground bank account but had actually signed some checks on the account for personal and family purposes. In addition to the foregoing we are also unable for the reasons set forth below to conclude after taking into account all of the facts and circumstances reflected in this record that it would be inequitable to hold petitioner liable for the *56 deficiency in tax. First, petitioners filed a joint return for 1977 from which a substantial amount of taxable income apparently generated by the Stomping Ground business was omitted. Second, while contending that she did not own the Stomping Ground business or have any substantial knowledge of its operation, petitioner had signed numerous documents for the business including applications for beverage licenses, employment tax returns, and sales tax reports. Third, she was authorized to sign checks on the business bank account and almost all business checks drawn on the account bore her signature by means of a stamp and while contending that she was unaware of the existence of the stamp bearing her signature or that it was used on the business checks she admittedly signed some checks on the account for personal expenses. Fourth, in connection with other litigation and while under oath petitioner testified that the Stomping Ground business was owned by her because everything her husband had belonged to her and by agreement between them was in her name. Fifth, at the date of trial the assets in her name included three contiguous parcels of land purchased by petitioners in 1977 with *57 a down payment of $ 7,200 and a fourth contiguous parcel purchased in 1979 for $ 9,300. In 1977 and 1978 one of these parcels was improved by the construction of a house containing 4,879 square feet of living space and five bedrooms and four and one-half baths. From the record we are unable to determine the cost of the house but it was at least $ 95,000 to $ 105,000 as argued by petitioner but not more than $ 150,000 as contended by respondent. When all of the foregoing circumstances are taken into account it is apparent that petitioner has failed to establish that it would be inequitable to hold her liable for the deficiency in tax. In fact, it appears that such circumstances could well support an inference that petitioner actively participated in a scheme with Mr. Gray whereby all of the responsibility, both civil and criminal, for fraudulently omitting income and fraudulently obtaining social security benefits would be placed upon Mr. Gray while the assets represented at least in part by such fraudulent activity would be titled to petitioner. Consequently, it would be inequitable to conclude that she was not liable for the deficiency. To reflect concessions as well as the *58 foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩